Please call the next case. Our next case is 4-14-0-4-6-0-W-C. William Gross v. Stan Rutherford, Freeman & United Coal Mining Comp'n. Bruce Tesori v. The Appellant. Kenneth Wertz v. The Appellate. Counsel? May it please the Court, my name is Bruce Tesori and I represent William Gross. The decision on remand was wrong as a matter of law and it's also against the manifest way of the evidence. This is not a complicated case. It was wrong as a matter of law because it went beyond the scope of the remand. When the Commission went past the two issues of disablement and nation extent, it was acting without authority. In layman's language, everything else was decided. Everything except what was specifically stated in the remand was over. This Court listed the only two issues for the Commission to rule on and the language was not ambiguous. As to the question of whether the issue of Section 1F is somehow an extension and an integral part of the issue of disablement, the answer is clear in the decision on remand itself. Disablement is Section 1E. Timeliness, the two year period of approving disablement, is Section 1N. It's not in the section on disablement. You decide on timeliness of disablement after you decide on the existence of disablement. Now there are two separate issues. When you write a proposed decision for the arbitrator, you have a section for disablement and a different section for timeliness. You can have disablement and not fulfill Section 1F and you can prove timely problems under Section 1F but not fulfill the definition of disablement. And when I go over the problems with the Commission decision, one word keeps coming into my mind. Why? Why didn't the Commission just follow the plain meaning of the remand? I mean this is a case revolving around a single disease, COPD. The disease is mild. It isn't a total permanent. It isn't a wage differential. According to recent past, the nation extended the case probably somewhere around 10%. And if that's the outcome, the petitioner done little better than break even when it got here the first time. When it went back down, the Commission knew by the second time it got back to this court. Even if the petitioner would win, it would be a period of victory. The victory could end up in a loss in terms of time and money. And also by sending it back up in the formative, the Commission had to know that if this court found that the decision was in error on the 1F denial, it would be remanded a second time. It was not a solemn-like resolution. Now, the question of why isn't up to the petitioner. It's not up to the respondent. But it is on the table. It's something to consider in the background of the argument. Now, the decision also is against the manifest weight of the evidence. First, the Commission wrote that, quote, based on the medical records, the Commission finds the petitioner did not have any complaints of sharpness of breath to any medical providers until he saw Dr. Hauser on January 10, 2006. Well, it's just not true. There were at least eight treatment entries that included sharpness of breath or exertional dyspnea. Now, the respondent didn't deny the entries. In all fairness, it asserts that they're related to something else, heart problems, something besides COPD. But the Commission didn't say no sharpness of breath except for reasons other than COPD. Mr. Messer, let me ask you two questions based on that because I am curious. Apparently, the Commission, implicit in its decision, seemingly rejected the testimony of the claimant regarding the shortness of breath. But I'm curious, in doing that, and I say it's implicit, did the Commission ever find that the claimant was not credible? Did it make any specific findings that he was not credible? I didn't see that. I didn't see it. There was a lot of talk about the sharpness of breath. The sharpness of breath, if the claimant were wrong, the Commission was clearly wrong, too. And that sharpness of breath was overlaid on two specific objective findings. In 2002, while the miner was still working, there was a CT scan that found emphysema. Dr. Wren, the expert for the respondent, said, based on that CT, there was emphysema. And he did find emphysema. And obviously, this was within the statute of limitations. Yes, yes. And another one, in 1999, there was a fiber optic bronchoscopy, which the person that took it said there was chronic bronchitis. Those are the two COPDs. Both were timely. Both were back while he was still working, in fact. The Commission makes sort of an unusual statement, in a sense, I believe. They felt, well, his testimony, the claimant's testimony was not corroborated by the medical records. For a claimant to recover, does his testimony need to be corroborated as a matter of law by records? I think not. I think particularly when you have objective testing. But this shortness of breath thing comes up all the time. And it is confusing. If you're the doctor and you're right, deny shortness of breath. Which shortness of breath are you talking about? Heart related? Lung related? Asthma related? I've had atrial fibrillation. Some of my people have. You're laying in bed with a heart rate of 130. They help you sit up. It goes to 160. And they're all over you. Short of breath. Because if you are, you've got a big problem. That's one kind of short of breath. They're not asking, have you ever been short of breath in your life? Or if you and your walker took a run down the hall, would you come back? They want to know, are you sitting there right now short of breath? Second kind of short of breath is the kind we all experience. We've run a quarter mile, we're out of breath. A third kind is the kind you have with asthma. The air is out there, you can't get it in. And in these treatment records, that shortness of breath is almost never defined. And so it's illusory. It's not a thing to base this on. Particularly when you have the objective testing. And there's another thing too. They indicated that the petitioner didn't say that he was going to retire because of his problems. That's a red herring, isn't it? Yes, I think this court has gone over a number of times that with a traumatic injury, or with a man as a whole at war like this, you expect the person to go back to work. So I think that is a red herring, and it was wrong. And so I believe that the commission was against the manifest way of the evidence, except that we never get there. Because they were wrong as a matter of law to talk about the 1F in the first place. And I ask that this case be remanded to determine the nature and extent. Thank you. Thank you, Counselor. Counselor, you may respond. Good morning. May it please the Court, Mr. LeSueur. The opinion issued by Justice Stewart in this case, or that authored the opinion in this case, specifically stated that the case was to be remanded to the commission because we believe that the commission's finding that COPD was solely caused by his lack of use is against the manifest way of the evidence. And that really, and maybe you can't remember back to then, but that really was the focus in that case because we had some competing medical opinions about what caused the mild destruction this gentleman had. And I think at the time, that really was the focus of the argument we had. But in that opinion, it also stated that the remand was to be made for a determination of whether disability exists. In that opinion, this Court did not say that this man had disability. To do that, this Court would have had to, of course, said that it was timely as well. And the definition of disability is actually a term of art when it comes to occupational disease. It's contained in Section 1. And it's stated in the alternative, and we need not go into that now, but it also is stated that it must occur within two years of the date of last exposure. There has not been yet a factual finding up to this Commission decision on remand in that regard. They were instructed to determine whether disability was present. Not only then must they determine that, but they must determine as well whether it's timely because that's a condition proceeding. And Justice Hudson, I'd like to focus on the question you had about shortness of breath. This gentleman did have histories of shortness of breath in his medical records. There's no question about it. I don't think the Commission ignored it. I think what the Commission did was this. He had complaints, I believe it was 1999. It was coincident with his heart disease. Later in 2002, he did as well. It was actually coincident with his myocardial infarction. In this case, the expert for the claimant here, the employee, was Dr. Hauser. And Dr. Hauser testified that there are many causes of shortness of breath. And they include, importantly, deconditioning, which is probably the most common cause in an older population. But immediately behind that is heart disease. And this gentleman had heart disease. The determination that he has COPD cannot be made based upon a symptom of shortness of breath alone, for the very reason that it can be due to many different things, including heart disease, which this gentleman had. So I, go ahead. I think your point is well taken on that. But as I read the record, clearly, by both objective testing, by both Hauser and Wren, confirmed that it was manifested in January 2006. They agree with that, correct? It was confirmed in January 2006. By spirometry. With the caveat, and it's not important here, because it's water under the bridge now, that testing was of questionable validity. But the court has accepted it, so I accept it. And that, coincidentally, is two months after the statute period expired. Yeah. Yeah. And if I could finish my thought on this, it was that spirometry that allowed Dr. Hauser to say that he believed this gentleman suffered from COPD. It wasn't the shortness of breath. And the reason why I say that is I asked him an open-ended question, which may not have been a good idea, but I did it. And I asked him, do you know what this gentleman's pulmonary function was at any other time than on that date? And he said no. Now, he could have said yes. I think that back when he was having shortness of breath in 1999 or 2002, that was evidence of an impairment in pulmonary function then. But he didn't do that, and I think he didn't do that correctly, because you cannot base a diagnosis of COPD solely on shortness of breath, especially in a patient who has the heart disease that he has. He based it on that minimal, abnormal finding in spirometry, as you say, Justice Hudson, two years, two months later. When did that first occur? For the court now to say that he's proven disablement in a timely fashion, you have to find factually that he had it within that two years. When I asked his expert if he could say that he had it at any time other than then, and he could not. Did Hauser find that the COPD was secondary to coal dust exposure? Is that part of his opinion? I would say he would have. I honestly can't remember his testimony. If he did, his last exposure to coal dust was within the two years. I would have to look at that testimony. Now, you have to recall that Dr. Hauser diagnosed him with pneumoconiosis, and I'm confident he probably related it to that. It's now a given he doesn't have that. And so in regard to Mr. Besor's discussion about the CT scan and the emphysema, this gentleman had a significant smoking history, and that was the subject of the last opinion. But what was significant about that CT scan, and I know that you all know this, is that the hallmark for black lungs, is a coal macule that on an x-ray is seen as a nodule, and there weren't any in that field of emphysema that was there. I got off on a tangent, Justice Hoffman, but I would honestly, and I apologize, I would have to go back to look and see if he was asked, is his obstruction consistent with pneumoconiosis, or just to a generic dust exposure? And I apologize for not being able to answer that for you. Justice Harris, you look like you're okay. Nothing. I really don't have anything more to say. I think the essential point I want to leave you with is that there was no prior factual determination as to whether disability was present within two years of the date of this gentleman's last exposure until the Commission made that determination in their decision and opinion on remand. And for the Court now to say that there was, you're taking another now factual issue away from the Commission in this case, and I'd ask that you affirm the Commission decision on remand. Thank you, Counsel. Counsel, you may reply. This case is as simple as it gets. Sharpness of breath is not a requirement for emphysema. Sharpness of breath is not required for chronic bronchitis. Cough is. Sharpness of breath is not a requirement for COPD. You can have that without sharpness of breath in the records. Do you know whether Howard Hauser said that the COPD was secondary to cold dust exposure? Yes, he did. Yes, he did. Now, the sharpness, the PFTs that you brought up, Justice Hoffman, that confirm the obstruction compared to the CT in 2002, and the fibro-optic bronchoscopy in 1999, the PFTs, which were a couple months after the 1F ran, confirmed what was in that CT. Now we measured it. First we saw it. We saw it in the CT. We saw it in the fibro-optic bronchoscopy, but it hadn't been measured yet. The measuring of Dr. Hauser in 2006 simply confirms that the damage that was done, now we can measure it, by what we already knew was there. What was there? Tissue damage. That's all that shows up on a CT. That's all that shows up on a fibro-optic bronchoscopy. And that showed up before January 2006, you're saying? All of it. All of it. The CT was in 2002 when he was still working. The CT was in 2002. Bronchoscopy 1999. At those times, you saw the horses coming. You didn't know how many. You saw the dirt in the air. But then in 2006, it was actually measured on a mild obstruction, which Dr. Wren agreed with. Dr. Wren also agreed that the emphysema was there in 2002, based on that CT scan. I don't know how the commission can say, can reject respondents on doctor, but... Well, I have to ask you this, but Mr. Wertz's last question, he said that when he asked Dr. Hauser on cross-examination, a pointed question, his opinion really didn't help to claim it. Do you agree with his characterization of the answer to the question? Well, I actually couldn't hear him, too. I was getting old at 68. Okay. And he's a soft-spoken man. However, in my reading of the evidence, in preparation for today,